FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2023 JUN 15  A 11: 51

CAROL L. MICHEL
  meb

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

BILL OF INFORMATION FOR
<u>HEALTH CARE FRAUD</u>

**FELONY**

**23-00125**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CRIMINAL DOCKET NO. |
| v. | * | SECTION: SECT. H MAG. 4 |
| CRAIG L. LOVELACE | * | VIOLATIONS:<br>18 U.S.C. § 1347 |
| | * | 18 U.S.C. § 2 |
| * * * | | |

The United States Attorney charges that:

<u>COUNT 1</u>

**A.    <u>AT ALL TIMES MATERIAL HEREIN:</u>**

<u>The Medicare Program</u>

1. The Medicare program ("Medicare") was a federal health insurance program, affecting commerce, that provided benefits to persons who were 65 years of age and older or disabled. The benefits available under Medicare were governed by federal statutes and regulations.

2. The United States Department of Health and Human Services ("HHS"), through its agency, the Centers for Medicare and Medicaid Services ("CMS"), oversaw and administered Medicare. Individuals who received benefits under Medicare were commonly referred to as Medicare "beneficiaries." Each beneficiary was given a unique Medicare identification number.



Fee USA
Process
X Dktd
CtRmDep
Doc.No.

3. Medicare was a "health care benefit program," as defined by Title 18, United States Code, Section 24(b).

4. Licensed medical providers ("providers") who provided items or services to beneficiaries were able to apply for and obtain a Medicare "provider number." Providers that received a provider number were able to file claims with Medicare to obtain reimbursement for items and services rendered to beneficiaries.

5. Medicare covered different types of benefits, which were separated into different program "parts." Medicare "Part B" was a medical insurance program that covered, among other things, medical items and services that were medically necessary.

6. Durable medical equipment ("DME") was reusable medical equipment. DME included physical support equipment, such as orthotic devices, walkers, canes, and hospital beds, as well as respiratory and nutritional support equipment, such as ventilators, continuous positive airway pressure ("CPAP") machines, biphasic positive airway pressure ("BIPAP") machines, tracheostomy equipment and supplies, and enteral nutrition formulas and supplies. DME was covered by Medicare under "Part B."

7. Medicare would pay claims for the provision of DME only if the equipment was ordered by a licensed provider, was reasonable and medically necessary for the treatment of a diagnosed and covered condition, and was actually provided to beneficiaries as represented. In claims submitted to Medicare for the reimbursement of provided DME, providers were required to set forth, among other information, the beneficiary's name and unique Medicare identification number, the equipment provided to the beneficiary, the date the equipment was provided, the cost of the equipment, and the name and provider number of the provider who ordered the equipment.

8. Medicare did not reimburse providers for automatically dispensing refills of DME on a pre-determined basis. Each refill of an order for previously provided DME, or recurring order for DME, had to be medically reasonable and necessary to be reimbursed by Medicare.

## The Medicaid Program

9. The Medicaid Program ("Medicaid") was a federal and state funded health insurance program, affecting commerce, designed to provide medical assistance to persons whose income and resources were insufficient to meet the costs of necessary care and services. Individuals who qualified for Medicaid benefits were commonly referred to as "recipients" (hereafter, "beneficiaries" and "recipients" will be collectively referred to as "beneficiaries").

10. Medicaid was a "health care benefit program," as defined by Title 18, United States Code, Section 24(b).

11. Medicaid reimbursed DME providers for medically reasonable and necessary items and services rendered to beneficiaries. Like Medicare, Medicaid would pay claims for the provision of DME only if the equipment was ordered by a licensed provider, was medically reasonable and necessary for the treatment of a diagnosed and covered condition, and was actually provided to beneficiaries as represented.

## The Defendant and Related Individuals and Entities

12. **LOVELACE** was a resident of Destrehan, Louisiana, in the Eastern District of Louisiana. **LOVELACE** was the owner and President of Advanced Medical Equipment, Inc. ("AME"), a corporation doing business in Kenner, Louisiana, in the Eastern District of Louisiana. AME operated as a DME supply company, and it submitted claims to Medicare and Medicaid for DME supplied to beneficiaries.

**B.     THE SCHEME AND ARTIFICE TO DEFRAUD:**

From in or around January 2016, and continuing through in or around June 2022, **LOVELACE** executed a scheme and artifice to defraud in which he submitted, and caused to be submitted, through AME, false and fraudulent claims to Medicare and Medicaid for certain health care items, namely respiratory and nutritional support DME (hereinafter, "DME"), that was medically unnecessary, ineligible for Medicare reimbursement, or not provided as represented, including for DME purportedly supplied to beneficiaries located in the Eastern District of Louisiana and elsewhere, and used the fraudulent proceeds for the benefit of himself and others.

The purpose of the scheme and artifice was for **LOVELACE** to unlawfully enrich himself, through AME, by submitting and causing the submission of false and fraudulent claims to Medicare and Medicaid; receiving and obtaining the reimbursements paid by Medicare and Medicaid based on the false and fraudulent claims submitted; and diverting proceeds of the fraud for the personal use and benefit of himself and others.

**C.     MANNER AND MEANS:**

The manner and means by which **LOVELACE** sought to accomplish the objects and purpose of the scheme and artifice included, among others:

1.     **LOVELACE**, on behalf of AME, submitted and caused the submission of false and fraudulent signed Medicare Enrollment Applications. In doing so, **LOVELACE** falsely and fraudulently certified to Medicare that AME would comply with all Medicare rules and regulations and federal laws, including prohibitions on presenting or causing to be presented any false or fraudulent claim for payment. **LOVELACE**, on behalf of AME, signed corresponding false and fraudulent enrollment documents and certifications with Medicaid.

4

2. In furtherance of the scheme and artifice, **LOVELACE** received orders for DME and then unlawfully used information from that order, without the knowledge or consent of the provider, to falsely and fraudulently bill Medicare and Medicaid for additional DME that was medically unnecessary, never ordered, and not provided as represented. In some instances, **LOVELACE** falsely and fraudulently billed beneficiaries for DME for months or years thereafter, including in instances when the DME was not medically reasonable or necessary, or after a patient died.

3. For example, **LOVELACE**, through AME, would falsely and fraudulently submit or cause the submission of claims to Medicare and Medicaid for two ventilators for beneficiaries, even though beneficiaries typically received either one ventilator, or, in some cases, no ventilators, from AME. **LOVELACE**, through AME, would also falsely and fraudulently submit or cause the submission of claims to Medicare and Medicaid for enteral nutrition for months, or even years, after a beneficiary's feeding tube was physically removed, and the DME was no longer medically reasonable or necessary.

4. In order to conceal and disguise the scheme, **LOVELACE** directed the falsification of documents, including medical records, order forms, and supporting documentation, on behalf of AME, that were submitted to Medicare in response to Medicare audits and records requests. These falsifications include, among others, forging dates, beneficiary signatures, provider signatures, and physician notes; and using tape, white-out, and scissors; in order to make it falsely appear that the audited DME was ordered and delivered.

5. From in or around January 2016, and continuing through in or around June 2022, in the Eastern District of Louisiana and elsewhere, **LOVELACE** submitted or caused the submission by AME of approximately $11,421,826.22 in claims to Medicare and Medicaid for

DME that was medically unreasonable or unnecessary, ineligible for reimbursement, or not provided as represented, and received approximately $7,959,869.82 in reimbursement from Medicare and Medicaid based on those false and fraudulent claims.

C. **THE OFFENSE:**

Beginning in or around January 2016, and continuing through in or around June 2022, in the Eastern District of Louisiana, and elsewhere, **CRAIG L. LOVELACE**, aiding and abetting, and aided and abetted by, others known and unknown to the United States Attorney, in connection with the delivery of and payment for health care benefits, items, and services, did knowingly and willfully execute, and attempt to execute, a scheme and artifice to defraud a health care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare and Medicaid, and to obtain, by means of material false and fraudulent pretenses, representations, and promises, money owned by, and under the custody and control of, Medicare and Medicaid, in connection with the delivery of and payment for health care benefits, items, and services.

On or about the date and in the approximate amount set forth below, within the Eastern District of Louisiana, **LOVELACE**, for the purpose of executing and attempting to execute the fraudulent scheme described above, knowingly and willfully submitted, and caused to be submitted, by AME, to Medicare, the following false and fraudulent claim for payment:

| Beneficiary | Code Billed | Claim Number | Date Submitted | Date Services Purportedly Rendered | Amount Billed | Amount Paid |
|---|---|---|---|---|---|---|
| M.T. | E0466 | 118264765678000 | 9/21/2018 | 8/24/2018 | $975.00 | $738.64 |

All in violation of Title 18, United States Code, Sections 1347 and 2.

## NOTICE OF FORFEITURE

1. The allegations of Count 1 of this Bill of Information are incorporated by reference as though set forth fully herein for the purpose of alleging forfeiture to the United States.

2. As a result of the offense alleged in Count 1, the defendant, **CRAIG L. LOVELACE**, shall forfeit to the United States pursuant to Title 18, United States Code, Section 982(a)(7), any property, real or personal, involved in said offense, and any property traceable to such property.

3. If any of the property described above as being subject to forfeiture, as a result of any act or omission of the defendant:

   a. cannot be located upon the exercise of due diligence;

   b. has been transferred or sold to, or deposited with, a third party;

   c. has been placed beyond the jurisdiction of the Court;

   d. has been substantially diminished in value; or

   e. has been commingled with other property which cannot be divided without difficulty;

the United States shall seek a money judgment and, pursuant to Title 21, United States Code, Section 853(p), forfeiture of any other property of the defendant up to the value of said property.


GLENN S. LEON
CHIEF, FRAUD SECTION
UNITED STATES DEPARTMENT OF JUSTICE

*Kelly J. Walters*
KELLY J. WALTERS
Trial Attorney
Criminal Division, Fraud Section
United States Department of Justice

DUANE A. EVANS
UNITED STATES ATTORNEY

*[signature]*

NICHOLAS MOSES
Assistant United States Attorney
Eastern District of Louisiana

New Orleans, Louisiana
June 15, 2023

No. _____

# United States District Court
## FOR THE
### EASTERN DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA

vs.

CRAIG L. LOVELACE

**BILL OF INFORMATION FOR HEALTH CARE FRAUD**

Violation(s): 18 U.S.C. § 1347
18 U.S.C. § 2

Filed _____, 20 23

_____, Clerk.

By _____, Deputy

*Kelly Z. Walters*
United States Department of Justice Trial Attorney
KELLY ZACK WALTERS